# CONSTITUTIONALITY OF LEGISLATION EXTENDING THE TERM OF THE FBI DIRECTOR

*It would be constitutional for Congress to enact legislation extending the term of Robert S. Mueller, III, as Director of the Federal Bureau of Investigation.*

June 20, 2011

## MEMORANDUM OPINION FOR THE COUNSEL TO THE PRESIDENT

You have asked whether it would be constitutional for Congress to enact legislation extending the term of Robert S. Mueller, III, as Director of the Federal Bureau of Investigation ("FBI"). We believe that it would.

President George W. Bush, with the Senate's advice and consent, appointed Mr. Mueller Director of the FBI on August 3, 2001. The statute providing for the Director's appointment sets a 10-year term and bars reappointment. *See* Omnibus Crime Control and Safe Streets Act, Pub. L. No. 90-351, § 1101, 82 Stat. 197, 236 (1968), as amended by Crime Control Act, Pub. L. No. 94-503, § 203, 90 Stat. 2407, 2427 (1976) (codified as amended at 28 U.S.C. § 532 note (2006)). A bill now pending in Congress would extend Mr. Mueller's term for two years.

Under the Constitution, *see* U.S. Const. art. I, § 8, cl. 18, Congress has the power to create offices of the United States Government and to define their features, including the terms during which office-holders will serve:

> To Congress under its legislative power is given the establishment of offices, the determination of their functions and jurisdiction, the prescribing of reasonable and relevant qualifications and rules of eligibility of appointees, *and the fixing of the term for which they are to be appointed*, and their compensation—all except as otherwise provided by the Constitution.

*Myers v. United States*, 272 U.S. 52, 129 (1926) (emphasis added). In the exercise of this authority, Congress from time to time has extended the terms of incumbents. Opinions of the courts, the Attorneys General, and this Office have repeatedly affirmed the constitutionality of such extensions. *See In re Investment Bankers, Inc.*, 4 F.3d 1556, 1562-63 (10th Cir. 1993); *In re Benny*, 812 F.2d 1133, 1141-42 (9th Cir. 1987); *In re Koerner*, 800 F.2d 1358, 1366-67 (5th Cir. 1986); *Constitutionality of Legislation Extending the Terms of Office of United States Parole Commissioners*, 18 Op. O.L.C. 166 (1994) ("*Parole Commissioners*"); *Whether Members of the Sentencing Commission Who Were Appointed Prior to the Enactment of a Holdover Statute May Exercise Holdover Rights Pursuant to the Statute*, 18 Op. O.L.C. 33 (1994); *Displaced Persons Commission—Terms of Members*, 41 Op. Att'y Gen. 88, 89-90 (1951) ("*Displaced Persons Commission*"); *Civil Service Retirement Act—Postmasters—Automatic Separation from the Service*, 35 Op. Att'y Gen. 309, 314 (1927) ("*Retirement Act*"); *see also The Constitutional Separation of Powers Between the President and Congress*, 20 Op. O.L.C. 124, 153-57 (1996) ("*Separation of Powers*") (discussing the opinions).

Although Congress has the power to set office-holders' terms, this power is subject to any limits "otherwise provided by the Constitution." *Myers*, 272 U.S. at 129. Under the Appointments Clause, art. II, § 2, cl. 2, the President "shall nominate, and by and with the Advice and Consent of the Senate, shall appoint . . . Officers of the United States"; in the case of inferior officers, Congress may vest the appointment in the President alone, the heads of Departments, or the courts of law. If the extension of an officer's term amounts to an appointment by Congress, the extension goes beyond Congress's authority to fix the terms of service. *See Parole Commissioners*, 18 Op. O.L.C. at 167 (citing *Buckley v. Valeo*, 424 U.S. 1, 124-41 (1976)); *Shoemaker v. United States*, 147 U.S. 282, 300 (1893).

The traditional position of the Executive Branch has been that Congress, by extending an incumbent officer's term, does not displace and take over the President's appointment authority, as long as the President remains free to remove the officer at will and make another appointment. In 1951, for example, the Acting Attorney General concluded that Congress by statute could extend the terms of two members of the Displaced Persons Commission: "I do not think . . . that there can be any question as to the power of the Congress to extend the terms of offices which it has created, subject, of course, to the President's constitutional power of appointment and removal." *Displaced Persons Commission*, 41 Op. Att'y Gen. at 90 (citation omitted). The Acting Attorney General "noted that such joint action by the Executive and the Congress in this field is not without precedent," *id.*, and gave as examples the extensions of the terms of members of the Reconstruction Finance Corporation, *see* Reconstruction Finance Corporation Act, ch. 334, § 2, 62 Stat. 261, 262 (1948), and the Atomic Energy Commission, *see* Atomic Energy Act, ch. 828, § 2, 62 Stat. 1259, 1259 (1948). In both instances, "no new nominations were submitted to the Senate and the incumbents continued to serve." *Displaced Persons Commission*, 41 Op. Att'y Gen. at 91.

In 1987, without discussing this traditional view, this Office reversed course and concluded that a statute extending the terms of United States Parole Commissioners was "an unconstitutional interference with the President's appointment power," because "[b]y extending the term of office for incumbent Commissioners appointed by the President for a fixed term, the Congress will effectively reappoint those Commissioners to new terms." *Reappointment of United States Parole Commissioners*, 11 Op. O.L.C. 135, 136 (1987). Seven years later, however, we returned to the earlier view, finding that Congress could extend the terms of Parole Commissioners. *See Parole Commissioners*, 18 Op. O.L.C. at 167-68. We noted that the extension of an incumbent's term creates a "potential tension" between Congress's power "to set and amend the term of an office" and the prohibition against its appointing officers of the United States, *id.*, but that whether any conflict actually exists "depends on how the extension functions," *id*. at 168. In particular, "[i]f applying an extension to an incumbent officer would function as a congressional appointment of the incumbent to a new term, then it violates the Appointments Clause." *Id.* "The classic example" of a statute raising the potential tension would be one lengthening the tenure of an incumbent whom the President may remove only for cause. *Id.* On the other hand, if Congress extends the term of an incumbent whom the President may remove at will, "there is no violation of the Appointments Clause, for here the President remains free to remove the officer and embark on the process of appointing a successor—the only impediment being the constitutionally sanctioned one of Senate confirmation." *Id.* In these

circumstances, the "legislation leaves the appointing authority—and incidental removal power—on precisely the same footing as it was prior to the enactment of the legislation." *Id.* (citations omitted). Because Parole Commissioners were removable at will, we concluded that the extension of their terms was constitutional. *See id.* at 169-72.

The courts have gone even further in sustaining congressional power to extend the terms of incumbents. They uniformly rejected the argument that Congress could not extend, by two to four years, the tenure of bankruptcy judges, even though those judges were removable only for cause. In the most prominent of these cases, *In re Benny*, the Ninth Circuit held that "the only point at which a prospective extension of term of office becomes similar to an appointment is when it extends the office for a very long time." 812 F.2d at 1141. Because of our concerns about Congress's extending the terms of officers with tenure protection, we have questioned the reasoning of that opinion, *see Separation of Powers*, 20 Op. O.L.C. at 155 & nn.89, 90, but the opinion does support the power of Congress to enact legislation that would lengthen the term of the incumbent FBI Director.[1]

In any event, even under the longstanding Executive Branch approach, which makes it relevant whether a position is tenure-protected, Congress would not violate the Appointments Clause by extending the FBI Director's term. As we have previously concluded, the FBI Director is removable at the will of the President. *See* Memorandum for Stuart M. Gerson, Acting Attorney General, from Daniel L. Koffsky, Acting Assistant Attorney General, Office of Legal Counsel, *Re: Removal of the Director of the Federal Bureau of Investigation* (Jan. 26, 1993). No statute purports to restrict the President's power to remove the Director. Specification of a term of office does not create such a restriction. *See Parsons v. United States*, 167 U.S. 324, 342 (1897). Nor is there any ground for inferring a restriction. Indeed, tenure protection for an officer with the FBI Director's broad investigative, administrative, and policymaking responsibilities would raise a serious constitutional question whether Congress had "impede[d] the President's ability to perform his constitutional duty" to take care that the laws be faithfully executed. *Morrison v. Olson*, 487 U.S. 654, 691 (1988). The legislative history of the statute specifying the Director's term, moreover, refutes any idea that Congress intended to limit the President's removal power. *See* 122 Cong. Rec. 23,809 (1976) ("Under the provisions of my amendment, there is no limitation on the constitutional power of the President to remove the FBI Director from office within the 10-year term.") (statement of Sen. Byrd); *id.* at 23,811 ("The FBI

---

[1] Concurring in the judgment in *In re Benny*, Judge Norris argued that there was no "principled distinction between congressional extensions of the terms of incumbents and more traditional forms of congressional appointments," because "[b]oth implicate the identical constitutional evil—congressional selection of the individuals filling nonlegislative offices." 812 F.2d at 1143 (footnotes omitted). This argument would seem to deny that any extension of an incumbent's term could be constitutional. Judge Norris's reasoning, however, may depend in part on the protected tenure of the bankruptcy judges in *In re Benny* whose terms were extended: "By extending the terms of known incumbents, Congress can guarantee that its choices will continue to serve for as long as Congress wishes, *unless the officers can be removed*." *Id.* (emphasis added). A footnote to this sentence discusses the circumstances in which Congress may confer tenure protection on officers, *id.* at 1143 n.5, but does not acknowledge the President's power to remove an officer who is serving at will.

Director is a highly placed figure in the executive branch and he can be removed by the President at any time, and for any reason that the President sees fit.") (statement of Sen. Byrd).[2]

Here, therefore, the issue is whether we continue to believe that the approach outlined in our earlier opinions and particularly in *Parole Commissioners* is correct. In connection with the pending bill, it has been argued that any legal act causing a person to hold an office that otherwise would be vacant is an "Appointment" under the Constitution, art. II, § 2, cl. 2, and thus requires use of the procedure laid out in the Appointments Clause. According to the argument, if legislation appoints an officer, the President's authority to remove him does not cure the defect. The Constitution forbids the appointment, whether or not the President may later act to undo it, and in practice the political costs of undoing the extension through removal of the incumbent may be prohibitive. Furthermore, whereas the process under the Constitution of nomination, confirmation, and appointment places on the President alone, with the advice and consent of the Senate, the responsibility for selection of an individual, legislation enabling an office-holder to serve an extended term without being reappointed diffuses that responsibility among the President and the members of the House and Senate.[3]

We disagree with this argument. We begin with the fundamental observation that legislation extending a term "does not represent a formal appointment by Congress." *Separation of Powers*, 20 Op. O.L.C. at 156. Director Mueller holds an office, and if his term is extended by Congress, he will continue to hold that office by virtue of appointment by President Bush, with the advice and consent of the Senate, in strict conformity with the requirements of the Appointments Clause. Rather than an exercise of the power to select the officer, the pending legislation, as a formal matter, is an exercise of Congress's power to set the term of service for the office. That the legislation here would enable Director Mueller to stay in an office he would otherwise have to vacate does not in itself constitute a formal appointment, any more than Congress makes an appointment when it relieves an individual office-holder from mandatory retirement for age, thereby lifting an impending legal disability and enabling him to retain his position.[4] In neither situation has Congress prescribed a method of appointment at variance with the Appointments Clause. *Cf. Buckley*, 424 U.S. at 124-41.

---

[2] President Clinton, in fact, did remove FBI Director William S. Sessions. *See* Memorandum for Senate Committee on the Judiciary, from Vivian Chu, Legislative Attorney, Congressional Research Service, *Re: Director of the FBI: Position and Tenure* at 5 & n.39 (June 1, 2011).

[3] *See The President's Request to Extend the Service of Director Robert Mueller of the FBI Until 2013: Hearing Before the S. Comm. on the Judiciary*, 112th Cong. (2011) (statement of John Harrison, Professor of Law, University of Virginia School of Law).

[4] For example, section 704 of the National Defense Authorization Act, Fiscal Year 1989, provided that "[n]otwithstanding the limitation" otherwise requiring retirement for age, "the President may defer until October 1, 1989, the retirement of the officer serving as Chairman of the Joint Chiefs of Staff for the term which began on October 1, 1987." Pub. L. No. 100-456, 102 Stat. 1918, 1996-97 (1988). Without that legislation, the Chairman would have had to retire from active service, and the office of Chairman of the Joint Chiefs of Staff would have become vacant. Similarly, section 504 of the National Defense Authorization Act for Fiscal Year 1998, provided that a service Secretary could "defer the retirement . . . of an officer who is the Chief of Chaplains or Deputy Chief of Chaplains of that officer's armed force," as long as the deferment did not go beyond the month that the officer turned 68 years old. Pub. L. No. 105-85, 111 Stat. 1629, 1725 (1997). Congress, moreover, has twice enacted

Nor is the term extension contemplated by the pending legislation *functionally* the equivalent of a congressional appointment. Whether the extension of a term functions as an appointment depends on its effect on the President's appointment power. If the extension of a term were to preclude the President from making an appointment that he otherwise would have the power to make, Congress would in effect have displaced the President and itself exercised the appointment power. We believe that such a displacement can take place when Congress extends the term of a tenure-protected officer. *See Parole Commissioners*, 18 Op. O.L.C. at 168. If, however, "the President remains free to remove the officer and embark on the process of appointing a successor—the only impediment being the constitutionally sanctioned one of Senate confirmation," *id.*, the President has precisely the same appointment power as before the legislation. Congress has not taken over that power but has acted within its own power to fix the term during which the officer serves. Because the President is free at any time to dismiss the FBI Director and, with the Senate's advice and consent, appoint a new Director, the pending legislation does not functionally deprive the President of his role in appointing the Director under the Appointments Clause.

The proposed legislation, moreover, would leave with the President the "sole and undivided responsibility" for appointments. *The Federalist No. 76*, at 455 (Alexander Hamilton) (Clinton Rossiter ed., 1961). If the President signs the bill and allows the incumbent to remain in office, the "sole and undivided responsibility" of a single official, as well as the Senate's advice and consent, will still have been exercised in the incumbent's appointment—here, when President Bush appointed Director Mueller. Under the pending legislation, Director Mueller for the next two years would continue to serve as a result of that exercise of responsibility, just as he has since January 20, 2009, when President Obama took office. Throughout that time, each President sequentially will have had an additional "sole and undivided responsibility" for Director Mueller's service, because each President will have been able to remove him immediately, with or without cause.[5]

We also disagree that term-extension legislation violates the Appointments Clause because as a hypothetical matter it might impose some new political cost on the President. The relative political cost to the President of removing a term-extended incumbent as compared to the costs presented by other decisions involving appointment matters is speculative. In any event, the Appointments Clause does not prohibit all measures that might impose a political cost, but rather insures that Congress leave "scope for the judgment and will of the person or body in whom the Constitution vests the power of appointment." *Civil-Service Commission*, 13 Op. Att'y Gen. 516, 520 (1871). The pending legislation allows the exercise of the President's

---

statutes contemplating that, by specific later legislation, it would raise the retirement age of individual officers in the civil service. *See* Pub. L. No. 89-554, § 8335(d), 80 Stat. 378, 571 (1966) ("The automatic separation provisions of this section do not apply to—(1) an individual named by a statute providing for the continuance of the individual in the [civil] service."); Federal Executive Pay Act, Pub. L. No. 84-854, § 5(d), 70 Stat. 736, 749 (1956) ("The automatic separation provisions of this section shall not apply to any person named in any Act of Congress providing for the continuance of such person in the [civil] service.").

[5] *See The President's Request to Extend the Service of Director Robert Mueller of the FBI Until 2013: Hearing Before the S. Comm. on the Judiciary*, 112th Cong. (2011) (statement of William Van Alstyne, Professor of Law, Marshall-Wythe Law School).

"judgment and will" with respect to who shall serve as Director of the FBI and for that reason is consistent with the Appointments Clause.

Nor do we believe that we should depart from our earlier view because the present bill would apply only to Director Mueller, while the earlier extensions applied to multi-member groups. In this respect, the pending bill might be thought more like an individual appointment. But in *Displaced Persons Commission*, the terms of only two commissioners were extended, *see* 41 Op. Att'y Gen. at 88, and our opinion in *Parole Commissioners* stated that as few as three commissioners might benefit from the extension, *see Parole Commissioners*, 18 Op. O.L.C. at 167. The difference between those cases and this one does not appear significant. To be sure, the grounds for the extensions at issue in those cases do not seem to have included, at least expressly, the merits of the individual office-holders. But although Director Mueller's personal strengths are a key reason for the pending legislation, the need for stability in the Nation's efforts against terrorism is also a significant part of the justification. As the President said in announcing the proposal, "[g]iven the ongoing threats facing the United States, as well as the leadership transitions at other agencies like the Defense Department and Central Intelligence Agency, I believe continuity and stability at the FBI is critical at this time." Press Release, Office of the Press Secretary, The White House, *President Obama Proposes Extending Term for FBI Director Robert Mueller* (May 12, 2011). We do not believe (and, to our knowledge, no one has argued) that high regard for an office-holder disables Congress from extending his term.

/s/

CAROLINE D. KRASS
Principal Deputy Assistant Attorney General